UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION - PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 7:17-01-KKC |
| Plaintiff, | |
| V. | OPINION AND ORDER |
| SHELLIE M. DUNCAN, | |
| Defendant. | |

**************

This matter is before the Court on defendant Shellie M. Duncan's motion (DE 287) requesting immediate release from prison pursuant to the Fifth and Eighth Amendments to the U.S. Constitution and 18 U.S.C. § 3582(c)(1)(A). For the following reasons, the Court must deny the request.

Duncan pleaded guilty to conspiring to distribute crack cocaine. On February 1, 2018, the Court sentenced her to 66 months in prison. She is currently housed at FCI Hazelton's Secure Female Facility and has served approximately 41 months. According to the government, her projected release date is November 6, 2021. Duncan states her projected release date is April 21, 2021.

As to Duncan's motion for relief under 18 U.S.C. § 3582(c)(1)(A), that statute provides for what is commonly referred to as "compassionate release." In support of this request, Duncan asserts that she faces a risk of being infected with the novel coronavirus disease COVID-19 while incarcerated.

Prior to the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), the court could not grant a motion for compassionate release unless the motion was filed by the director of the Bureau of Prisons (BOP). *See* 18 U.S.C. § 3582(c)(1)(A) (2017). If the defendant herself filed such a motion,

the court could not grant it.  The First Step Act amended § 3582(c)(1)(A) to allow the court to grant a motion for compassionate release filed by the defendant herself "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194 § 603 (Dec. 21, 2018).

The Sixth Circuit recently determined that the occurrence of one of the two events mentioned in the statute is a "mandatory condition" to the Court granting relief on a motion for compassionate release filed by the defendant.  *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id*. at 834. This is because the statute says that a "court may not" grant compassionate release unless the defendant files her motion after one of the two events has occurred. *Id*. Further, the Sixth Circuit ruled that this Court cannot find exceptions to the mandatory condition. *Id*. at 834 ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.")

In its response to Duncan's motion, the government argues that the Court cannot grant compassionate release in her case because she has not exhausted his administrative remedies. This is a proper invocation of the mandatory condition. *Id*. (finding no waiver or forfeiture of the mandatory condition where the government timely objected to defendant's "failure to exhaust.") The next issue then is whether Duncan has met the mandatory condition to this Court's ability to grant her compassionate release.

District courts across the country have grappled with the language of the First Step Act to determine precisely what a prisoner has to do before she can successfully bring her own motion for compassionate release in federal court. This Court has done the same, and, like the Eastern District of Arkansas, it has emerged uncertain of anything except: "(1) the statute would benefit

2

from clarifying amendments in Congress and (2) this Court will not be the last word on the question." *United States v. Smith*, No. 4:95-CR-00019-LPR-4, 2020 WL 2487277, at *7 (E.D. Ark. May 14, 2020).

It is clear that, if the warden fails to act on the defendant's request for a compassionate-release motion, the defendant can bring her own motion in federal court after waiting 30 days from the date the warden received her request. The uncertainty arises when a warden denies a defendant's request to file a motion for compassionate release. Can the defendant still come directly to court for relief after the lapse of 30 days from the warden's receipt of the request? Or is the defendant required to first "fully exhaust[] all administrative rights to appeal" the denial? If the defendant must first "fully exhaust" his administrative remedies, must she pursue those remedies until she reaches a final decision? Or is she required to pursue those remedies for only the 30-day period before proceeding to federal court, no matter the status of the administrative procedure?

Courts have come to different conclusions on these issues. In *Smith*, the Eastern District of Arkansas determined that the statute provides only one path to federal court when a warden denies a defendant's request for a compassionate-release motion. Before filing a motion in court, the defendant must fully exhaust her administrative remedies. *Smith*, 2020 WL 2487277, at *9. Other courts, however, have determined that the statute grants a defendant two alternative paths to federal court after the warden denies her request for a compassionate-release motion. In *United States v. Haney*, the Southern District of New York determined that "the statute does not necessarily require the moving defendant to fully litigate his claim before the agency (*i.e.*, the BOP) before bringing his petition to court." *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020). "Rather, it requires the defendant *either* to exhaust

3

administrative remedies *or* simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court." *Id*.

Fortunately, this Court has some guidance from the Sixth Circuit. In *Alam*, the court repeatedly interprets the statute as giving defendants two alternative tracks to federal court. "[P]risoners who seek compassionate release have the *option* to take their claim to federal court within 30 days, no matter the appeals available to them." *Alam*, 960 F.3d at 834 (emphasis added). As the Sixth Circuit views it, the statute "imposes a requirement on prisoners before they may move on their own behalf: They must 'fully exhaust[ ] all administrative rights' *or else* they must wait for 30 days after the warden's 'receipt of [their] request.'" *Id*. at 833 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)). "If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must 'fully exhaust[ ] all administrative rights to appeal' with the prison *or* wait 30 days after his first request to the prison." *Alam*, 960 F.3d at 833–34 (6th Cir. 2020) (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)). The court further clarified that, for those prisoners who choose to "pursue administrative review," they are not required to complete it before coming to federal court. *Id*. at 836. "[P]risoners have the option to go to federal court" if they pursue administrative review and it "comes up short (*or if 30 days pass*)." *Id*. (emphasis added).

Duncan does not assert that either of the tracks to federal court is appropriate in her case. She does not assert that she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). Nor does she assert that 30 days have lapsed since she requested that the warden of her facility file a motion on her behalf. In fact, she does not assert that she has even made such a request of her warden. According to the government she has not.

4

Accordingly, the Court cannot grant her compassionate release. The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, complying with the mandatory condition to the Court's ability to order compassionate release is perhaps most important. *See United States v. Raia,* No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" amid the risks posed by COVID-19). The requirement that a prisoner first request a motion for compassionate release from the warden recognizes that the BOP is better positioned than the courts to first assess issues such as a defendant's health, the adequacy of the measures taken by a particular place of incarceration to address any health risks, the risk presented to the public by a defendant's release, and the adequacy of a defendant's release plan.

As to Duncan's request for release under the Eighth Amendment, it is important to note that, with this claim, Duncan does not seek a court order requiring that the prison take measures to improve the conditions of her confinement. Instead, she seeks only release from prison. Such a claim is properly brought as a claim for habeas relief under 28 U.S.C. § 2241 because "it challenges the fact or extent of [her] confinement by seeking release from custody." *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020). "Release from confinement" is "the heart of habeas corpus." *Id.* at 838 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973)). Such motions must be filed in a court that has jurisdiction over the prisoner's custodian. *Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999). Thus, the Court must deny Duncan's request for release under the Eighth Amendment. If she wants to assert such a claim, she must file an action under 28 U.S.C. § 2241 in the federal court district in which she is incarcerated.

As to Duncan's request for release under the Fifth Amendment, Duncan does not develop this claim. Accordingly, the Court cannot order release under this claim either.

For these reasons, the Court hereby ORDERS that Duncan's motion (DE 287) for compassionate release and for release under the Eighth and Fifth Amendments is DENIED.

Dated July 20, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

6